## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BETH LUECK, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 20 C 2017 |
| v. | ) ) | Judge John Z. Lee |
| THE BUREAUS, INC. and STONELEIGH RECOVERY ASSOCIATES LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

In August 2019, Beth Lueck received a letter from Stoneleigh Recovery Associates LLC ("Stoneleigh") seeking to recover a debt on behalf of The Bureaus, Inc. ("The Bureaus") (collectively, "Defendants"). After Lueck disputed the validity of the debt, she obtained a credit report stating—falsely, in her view—that the account was previously in dispute, but that the dispute had been resolved. Based on these events, Lueck has filed this class action, claiming that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* The Bureaus has moved to dismiss the second amended complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing. For the reasons set forth below, the motion is granted in part and denied in part.

## I.    __Background__[1]

Lueck is a resident of Illinois, while Defendants are Illinois corporations in the business of collecting defaulted consumer debts originally owed or due another. 2d Am. Compl. ¶¶ 8–9, 12, ECF No. 36. Around August 2, 2019, Lueck received a debt collection letter from Stoneleigh. The Bureaus had acquired the purported debt account from the original creditor, Capital One, N.A. ("Capital One"), and hired Stoneleigh to collect the debt. *Id.* ¶¶ 14–20, 22.

Stoneleigh's letter offered to settle the account for the full balance due of $1,010.47, while advising Lueck that she could dispute the validity of the debt by sending a written notice within thirty days. *See id.*, Ex. B, 8/2/19 Debt Collection Letter, ECF No. 36-1 at 6. The letter came in an envelope marked "Personal & Confidential" beneath Stoneleigh's return address. 2d Am. Compl. ¶¶ 27–28.

On November 7, 2019, Lueck's attorney sent a letter to The Bureaus disputing the accuracy of the amount of debt as well as The Bureaus' ownership of the account. *Id.* ¶¶ 38, 40–41; *see id.*, Ex. C, 10/29/19 Debt Dispute Letter, ECF No. 36-1 at 8. The Bureaus responded by stating that Lueck had opened an account with Capital One, but did not provide any support for its ownership of the account. 2d Am. Compl. ¶ 44.

A few weeks later, around November 27, 2019, Lueck obtained her credit report from the consumer reporting agency TransUnion. *Id.* ¶¶ 46–47. The credit report reflected the purported account held by The Bureaus, along with the

---

[1] The following well-pleaded factual allegations are accepted as true for purposes of the motion to dismiss.

following comment: "Account previously in dispute—now resolved." *Id.* ¶¶ 47–48; *see id.*, Ex. D, Lueck's Redacted Credit Report at 3, ECF No. 36-1 at 10–12. Lueck alleges, upon information and belief, that the credit report stated this because The Bureaus had represented to TransUnion that her dispute regarding the account was resolved. 2d Am. Compl. ¶ 49. According to Lueck, this representation was false, because The Bureaus knew or should have known that Lueck's dispute had not been resolved and remains unresolved to this day. *Id.* ¶¶ 50–54.

Lueck asserts that, by falsely communicating to TransUnion that Lueck's dispute had been resolved and, thereby, suggesting that she simply had refused to pay it, The Bureaus materially lowered her credit score. *Id.* ¶¶ 56–58. Lueck also claims that The Bureaus' actions caused her to suffer emotional distress and reputational harm. *Id.* ¶ 59.

Lueck's second amended complaint brings two counts under the FDCPA. Count I, brought on behalf of Lueck individually, alleges that The Bureaus violated 15 U.S.C. § 1692e(8) by falsely reporting that her dispute had been resolved when it was not. 2d Am. Compl. ¶¶ 61–62. Count II, brought on behalf of Lueck as well as a putative class of all other similarly situated Illinois residents, alleges that Stoneleigh violated 15 U.S.C. § 1692f(8) by sending Lueck a collection letter in an envelope marked "Personal & Confidential" and that The Bureaus is vicariously liable for the violation as Stoneleigh's principal. *Id.* ¶¶ 65–73.

Now before the Court is The Bureaus' motion to dismiss Lueck's complaint for lack of Article III standing. *See* Def. The Bureaus' Mot. Dismiss, ECF No. 37.

## II.     Legal Standard

A motion to dismiss for lack of Article III standing falls under Rule 12(b)(1), which speaks in terms of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Silha v. ACT, Inc.*, 807 F.3d 169, 172 (7th Cir. 2015). A defendant may challenge subject-matter jurisdiction either facially or factually. *Silha*, 807 F.3d at 172. "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). When considering a facial challenge, "the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). Here, The Bureaus raises a facial challenge to Lueck's standing to bring Count II.

By contrast, "[a] factual challenge contends that there is *in fact* no subject matter jurisdiction, even if the pleadings are formally sufficient." *Silha*, 807 F.3d at 173 (cleaned up). When considering a factual challenge, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex*, 572 F.3d at 444 (cleaned up). The Bureaus asserts a factual challenge to Lueck's standing to bring Count I.

In either case, "[a]s the party invoking federal jurisdiction, a plaintiff bears the burden of establishing the elements of Article III standing." *Silha*, 807 F.3d at 173.

### III.   Analysis

The elements of Article III standing are well established.  "To establish standing, a plaintiff must show: (1) an injury in fact, that is, an invasion of a legally protected interest which is concrete and particularized, and actual or imminent; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision." *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 344 (7th Cir. 2018) (cleaned up); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

The Bureaus challenges Lueck's ability to satisfy the injury-in-fact element. As Counts I and II hinge on a different asserted injuries, the Court discusses each in turn.

### A.   Count I

To satisfy Article III's the injury-in-fact requirement for Count I, Lueck alleges that The Bureaus' misrepresentations to TransUnion caused a material decrease in her credit score.  *See* 2d Am. Compl. ¶ 57.  The Bureaus does not contest that a decreased credit score, or even "a real risk" of such "financial harm," suffices to show an injury in fact.  *See Evans*, 889 F.3d at 344–46 (cleaned up) (holding that the risk of a decreased credit score, among other "negative effects" produced by an "inaccurate credit report," satisfies the injury in fact element); *cf. Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 146–47 (4th Cir. 2008) ("[The defendant's] decision to report the debt but not the dispute resulted in a much lower credit score for [the plaintiff] than a report of both the debt and the dispute.").

Instead, The Bureaus contends that the information it reported to TransUnion—that the account was "previously in dispute," but that the dispute was "now resolved"—was accurate. *See* 2d Am. Compl. ¶ 48. Relying on a declaration from its president, The Bureaus seeks to establish that, two days after it received the dispute letter from Lueck's attorney, it sent a response verifying the validity and amount of Capital One account, which is all that was required of it to consider the dispute resolved before the next reporting cycle. *See* Def. The Bureaus' Mem. Supp. Mot. Dismiss ("Mem."), Ex. A, Sangalang Decl. ¶¶ 12–18, ECF No. 38-1 at 2–4; *cf. Walton v. EOS CCA*, 885 F.3d 1024, 1027–28 (7th Cir. 2018) (discussing the statutory requirements for verifying a debt). Thus, in The Bureaus' view, it had every right to report that the dispute had been resolved, and to the extent Lueck continued to dispute the debt, she had "no factual basis" for doing so. Mem. at 16.

The problem with this argument is that it goes to the merits of Lueck's claim, not Article III standing. The FDCPA provision under which Lueck brings Count I makes it a violation to communicate "to any person information which is known or which should be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). And here, The Bureaus essentially argues that it did not communicate any false information. That issue is not proper grist for a motion to dismiss under Rule 12(b)(1). *Cf. Evans*, 889 F.3d at 346–47 (treating defendant's argument that "there was nothing false, deceptive or misleading" about its conduct as a merits argument separate from the argument that plaintiffs lacked Article III standing (internal quotation marks omitted)).

6

The Bureaus also posits that Lueck must be able to demonstrate that its conduct actually caused her credit score to go down in order to survive the motion to dismiss. This is incorrect. While it is true that, on a factual challenge, the district court "may properly look beyond the jurisdictional allegations of the complaint," *Apex*, 572 F.3d at 444 (cleaned up), it need only do so when the moving party has submitted evidence to call those allegations into question, *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020). Here, The Bureaus has not submitted any such evidence. As a result, Lueck need only establish a *prima facie* case of standing to withstand dismissal at this stage, and she has carried this burden by alleging that The Bureaus caused her credit score to decrease by communicating that her dispute had been resolved. *See* 2d Am. Compl. ¶ 57.

Although these allegations present a different scenario than the one in which the Seventh Circuit found standing in *Evans*, in which the defendant did not report that the debt had been disputed at all, the Court finds it plausible to believe that The Bureaus' alleged communication created at least "a real risk of financial harm caused by an inaccurate credit rating." *See Evans*, 889 F.3d at 345 (cleaned up).

Accordingly, The Bureaus' motion to dismiss Count I is denied.

## B.  Count II

Count II claims that Defendants violated the FDCPA by sending Lueck a debt collection letter in an envelope marked "Personal & Confidential" underneath Stoneleigh's return address. 2d Am. Compl. ¶¶ 64–65; *cf.* 15 U.S.C. § 1692f(8) (making it a violation to use "any language or symbol, other than the debt collector's

address, on any envelope when communicating with a consumer by use of the mails"); *Preston v. Midland Credit Mgmt., Inc.*, 948 F.3d 772, 780–84 (7th Cir. 2020) (reading § 1692f(8) literally to bar the use of "any language or symbol on the envelope except for [the debt collector's] business name or address," without admitting of an exclusion for benign or innocuous language).

In terms of injury, Lueck alleges that this violation caused her "to experience negative emotions including annoyance, aggravation, and other garden variety emotional distress." 2d Am. Compl. ¶ 59; *see also id.* ¶ 29 (stating that Lueck was "dismayed" to see the words 'Personal & Confidential' on the envelope). But as the Seventh Circuit held in another FDCPA case, "a state of indignation," including aggravation and annoyance, "is not enough" to confer Article III standing. *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1072 (7th Cir. 2020). Nor does "purely psychological harm" satisfy the requirement of a concrete injury in fact. *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 616 (7th Cir. 2015); *see also Garland v. Orlans, PC*, 999 F.3d 432, 439–40 (6th Cir. 2021) (recognizing that only "severe emotional harm" constitutes a concrete injury).

Tacitly conceding that her garden-variety emotional distress is not enough to confer standing, Lueck argues in her response brief that the injury in fact underlying Count II is an invasion of her privacy. *See* 2d Am. Compl. ¶ 6.[2] And "the invasion of

---

[2] Although Lueck's complaint also alleges that she suffered "harm to [her] reputation," 2d Am. Compl. ¶ 59; *see also id.* ¶ 6, this bare allegation of reputational harm is insufficient to plead such harm, *see Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 880 (7th Cir. 2020); *see also Silha*, 807 F.3d at 174 (holding that "the *Twombly–Iqbal* facial plausibility requirement for pleading a claim" under Rule 12(b)(6) "is incorporated into the standard for pleading subject matter jurisdiction" under Rule 12(b)(1)).

privacy," Lueck observes, is "a core concern animating the FDCPA." *See Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

To be clear, Lueck recognizes that she "cannot claim 'a bare procedural violation'" of the FDCPA, "'divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'" *See Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016)). As the Seventh Circuit has further clarified in addressing claims under § 1692f, "[a]n FDCPA plaintiff must allege a concrete injury regardless of whether the alleged statutory violation is characterized as procedural or substantive." *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020) (citing *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1621 (2020)); *accord Nettles v. Midland Funding LLC*, 983 F.3d 896, 899–900 (7th Cir. 2020). As a result, "it's not enough for an FDCPA plaintiff to simply allege a . . . violation" of § 1692f, even if that provision was enacted to protect substantive privacy interests. *See Larkin*, 982 F.3d at 1065–66. Rather, the plaintiff must allege "that the statutory violation harmed him or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect." *Id.* (cleaned up); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2010–11 (2021) (clarifying that an appreciable risk of harm, "without more, cannot qualify as a concrete harm" in a suit for damages; instead, a plaintiff may only sue for damages once the risk of harm "materializes in the form of actual harm").

Against this backdrop, Lueck argues that the alleged violation of § 1692f(8) inflicted a concrete injury to her privacy interest by broadcasting "her status as a purported debtor" to the world. *See Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 251– 52 (6th Cir. 2020). Certainly, a "disclosure of private information" is a concrete, albeit intangible, harm—one that has been "traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 141 S. Ct. at 2204; *see also Dancel v. Groupon, Inc.*, No. 18 C 2027, 2018 WL 11195080, at *2 (N.D. Ill. Oct. 10, 2018) ("[T]he dissemination to a third party of information in which a person has a right to privacy is a sufficiently concrete injury for standing purposes." (citing *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 910 (7th Cir. 2017) (cleaned up))). But the Court is not persuaded that Lueck has alleged a disclosure of private information.

The main case on which Lueck rests this argument is *DiNaples v. MRS BPO, LLC*, 934 F.3d 275 (3d Cir. 2019). In *DiNaples*, the plaintiff received a debt collection letter in an envelope containing an unencrypted "quick response" or "QR" code that, when scanned with a QR-code reader, revealed her account number. *Id.* at 278. In finding that the plaintiff had suffered a concrete injury, the court relied on circuit case law recognizing "that the harm inflicted by exposing the debtor's account number [is] 'a legally cognizable injury.'" *Id.* at 279–80 (quoting *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 358 (3d Cir. 2018)). Reasoning that "[d]isclosure of the debtor's account number through a QR code, which anyone could easily scan and read, still 'implicates core privacy concerns,'" the court held that its precedents dictated the same result there. *Id.* at 280 (quoting *Douglass*, 765 F.3d at 304).

Here, by contrast, Lueck alleges only that the envelope included the phrase, "Personal & Confidential." 2d Am. Compl. ¶ 28. Such language alone, without more, does not consist of "information in which a person has a right to privacy." *See Dancel*, 2018 WL 11195080, at \*2. Put otherwise, it is not "a core piece of information relating to the debtor's status as such," which, "if disclosed to the public, . . . could be used to expose her financial predicament." *See DiNaples*, 934 F.3d at 279 (cleaned up).

Lueck does assert that it is "clear to anyone viewing the envelope that it contained a letter regarding a collection matter," 2d Am. Compl. ¶ 31, but such conclusory allegations are "not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). And, drawing upon its "common sense," *id.*, the Court finds that the language at issue did little to "suggest the purpose of the communication," *see* Statement of General Policy of Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,108 (Dec. 13, 1988). Indeed, it is not difficult to imagine any number of communications that could be marked "Personal & Confidential," including, notably, medical records. *Cf. United States v. Hoey*, No. S3 11-CR-337, 2014 WL 12911265, at \*1 (S.D.N.Y. June 27, 2014) (noting that the phrase "'personal or confidential information' . . . may include such things as medical records" (cleaned up)).

The Court is mindful of the Seventh Circuit's decision in *Preston*, holding that any language or symbols not allowed by the plain text of § 1692f(8), including such phrases as "TIME SENSITIVE DOCUMENT" and "PERSONAL AND CONFIDENTIAL," violates that provision. 948 F.3d at 780–84. But the *Preston*

11

court had no occasion to address whether the mere presence of those phrases on envelopes was sufficient to confer Article III standing. *See id.* at 782–83. What is more, the court took no issue with the district court's observation that the phrase "TIME SENSITIVE DOCUMENT" did not create any privacy concerns. *See id.* at 776–77. Instead, it reasoned that the statutory text was not limited to "language or symbols [that] intrude into the privacy or the debtor." *See id.* at 783–84 (cleaned up). Thus, the presence of "Personal & Confidential" on the envelope addressed to Lueck may have violated § 1692f, but, as we know, a statutory violation alone is insufficient to establish standing. *Cf. Larkin*, 982 F.3d at 1064 (noting that a congressionally created cause of action does not "automatically satisf[y] the injury-in-fact requirement" (quoting *Spokeo*, 136 S. Ct. at 1549)).

In sum, because Lueck has not shown an injury in fact underlying her § 1692f claim, The Bureaus' motion to dismiss for lack of Article III standing is granted as to Count II. And because "it is well established that the court has an independent obligation to assure that standing exists," *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009), the Court *sua sponte* dismisses Count II as to Stoneleigh as well. These dismissals are without prejudice. *See Markakos v. Medicredit, Inc.*, 997 F.3d 778, 782 n.1 (7th Cir. 2021).

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, The Bureau's motion to dismiss is granted in part and denied in part.  Count I of the second amended complaint may proceed, while Count II is dismissed without prejudice for want of Article III standing.  Due to that same defect, the Court *sua sponte* dismisses Count II without prejudice as to Stoneleigh as well.


**IT IS SO ORDERED.**                    **ENTERED: 9/20/21**


                                        _____
                                        **JOHN Z. LEE**
                                        **United States District Judge**

13